IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRAVIS A.,                              )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )     1:24CV79
                                        )
LELAND DUDEK,                           )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Travis A. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on April 20, 2021, alleging a disability onset date of January 1, 2014. (Tr. at 24, 273-82.)[1] His application was denied initially (Tr. at 90-103, 119-23) and upon reconsideration (Tr. at 105-18, 132-34). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ").

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

(Tr. at 135.) On June 13, 2023, Plaintiff, along with his attorney appeared at the subsequent hearing, at which both Plaintiff and a impartial vocational expert testified. (Tr. at 24, 43-61.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act since April 20, 2021, the date the application was filed.[2] (Tr. at 37.) On November 30, 2023, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 11-16.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270

---

[2] The ruling could not extend to earlier than the application date because SSI is not payable prior to the month following the month in which the application was filed, irrespective of the claimant's alleged onset date. See 20 C.F.R. § 416.335.

F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 20, 2021, the application date. Plaintiff therefore met his burden at step one of the sequential evaluation process. (Tr. at 26.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> hepatitis; cirrhosis of the liver; diabetes mellitus; neuropathy; history of opioid dependence; and depression[.]

(Tr. at 27.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 27-29.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, during the time period at issue, he could perform a range of light work with the following, non-exertional limitations:

> [Plaintiff] can frequently operate hand controls with his right and/or left hand; frequently reach overhead to the left, and frequently reach overhead to the right. He can handle, finger, and feel items frequently with his right and/or left hand.

5

> [Plaintiff] can climb ladders, ropes, or scaffolds occasionally, and crawl occasionally. He can have occasional exposure to unprotected heights, moving mechanical parts, and vibration. [Plaintiff] is able to perform simple, routine tasks; perform simple work-related decisions; interact with supervisors frequently; and interact with coworkers and the public occasionally. [His] time off task[s] . . . can be accommodated by normal breaks.

(Tr. at 29.) At step four of the analysis, the ALJ found that Plaintiff had no past relevant work. (Tr. at 36.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the VE as to these factors, he could perform other jobs available in the national economy. (Tr. at 36-37.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 37.)

Plaintiff now raises four challenges to the ALJ's decision. Specifically, he contends that the ALJ (1) failed to evaluate several of Plaintiff's impairments at step two of the sequential analysis or at subsequent steps, (2) "misapplied the law when evaluating the medical necessity of Plaintiff's assistive device," (3) "failed to perform a function-by-function evaluation of Plaintiff's ability to engage in standing and walking," and (4) "erred in his treatment of the medical opinions." (Pl.'s Br. [Doc. #13] at 1.) Because the Court finds that Plaintiff's first contention requires remand, as discussed below, the Court need not reach Plaintiff's additional contentions.

Plaintiff first argues that the ALJ failed to evaluate all of Plaintiff's relevant medical conditions at step two or subsequent steps of the sequential analysis.

> Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must

Case 1:24-cv-00079-JEP    Document 15    Filed 03/31/25    Page 6 of 14

> consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p: Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims,1996 WL 374184, at * 5 (1996). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. August 22, 2013). In this case, as an initial matter, Plaintiff acknowledges that the ALJ's omission of a severe impairment at step two does not, without more, necessitate remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).

In the present case, the ALJ identified hepatitis, cirrhosis, diabetes, neuropathy, depression, and a history of opioid dependence as Plaintiff's severe impairments at step two. (Tr. at 27.) Notably, the ALJ's discussion at this step includes no mention of non-severe or other medically determinable impairments. Instead, after listing Plaintiff's severe impairments, the ALJ noted that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28" and proceeded to step three. (Tr. at 27.)

Plaintiff now contends that the ALJ erred by failing to consider Plaintiff's documented carpometacarpal ("CMC") arthritis, bilateral carpal tunnel syndrome, pes planus with

7

hammertoe deformities, and posterior tibialis tendinopathy at this step or consider the effect of these impairments on Plaintiff's ability to work. (Pl.'s Br. at 5-11.) Defendant, in turn, argues that the ALJ adequately evaluated Plaintiff's hand and foot impairments by considering them in the context of Plaintiff's neuropathy. (Def.'s Br. [Doc. #14] at 7.) However, having reviewed the ALJ's decision, the Court notes that not only does the ALJ fail to mention these impairments, the ALJ does not discuss the related medical records, imaging, or diagnoses, and therefore the Court cannot determine whether or how the ALJ assessed the impact of these impairments, as discussed below.

As noted by Plaintiff, the Fourth Circuit explained the importance of considering the "combined effect" of a claimant's impairments in Walker v. Bowen, 876 F.2d 1097 (4th Cir. 1989):

> It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effects of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them.

876 F.2d at 1100. Citing this passage, Plaintiff contends that, by "fail[ing] to evaluate medically determinable impairments altogether, [the ALJ in this case] also fail[ed] to consider the effects these conditions have upon [Plaintiff's] ability to work when combined with those conditions which the ALJ did discuss." (Pl.'s Br. at 6.)

Regarding his CMC arthritis (arthritis of the thumb) and carpal tunnel syndrome, Plaintiff asserts that these additional impairments would potentially limit his ability to handle, finger, and feel beyond the "frequent" level set out in the RFC assessment, and would support

8

his contentions that he had trouble using his hands for shaving, putting on his socks, tying his shoes, and typing more than 5 minutes. (Pl.'s Br. at 5.) Plaintiff notes that the ALJ specifically found that the limitation to frequent handling and fingering "accounts for the claimant's neuropathy in his hands" (Tr. at 33), but without any discussion of the impact of his carpal tunnel syndrome and his CMC arthritis.

Similarly with regard to his ability to stand and walk, the ALJ specifically found that "limiting the claimant to less than the full range of light work with postural limitations accounts for the claimant's neuropathy in his feet" (Tr. at 33), but Plaintiff notes that the ALJ did not address Plaintiff's pes planus (flat feet) with hammertoe deformities and posterior tibial tendinopathy. Plaintiff notes that his pes planus has been described as "severe" and his hammertoe deformity as "moderate" and affecting several toes, and these conditions would further support his claims of pain in his feet and difficulty walking. (Pl. Br. at 10-11.)

The medical record reflects that in June of 2021, Plaintiff saw Physician's Assistant ("PA") Heather Yates-Davis of Lexington Primary Care for evaluation of his diabetes as well as his severe hand and foot pain. (Tr. at 960.) PA Davis found that Plaintiff had degenerative arthritis of the right thumb and referred him to orthopedic surgery. (Tr. at 961.) The next month, in July of 2021, Plaintiff saw the orthopedic surgeon at EmergeOrtho for continuous bilateral hand pain which was constant and worsening. (Tr. at 1119.) He had known neuropathy bilaterally, but also additional limitations with his right thumb. He reported trouble with fine motor skills and had a knot in his right thumb and palpable cords to his left palm. (Tr. at 1119.) Lifting, carrying, gripping, grasping, squeezing, and range of motion activities all exacerbated his pain. He was also experiencing numbness, tingling, and stiffness.

9

(Tr. at 1119.) On physical examination, he displayed a positive Tinel's sign at his wrist and a positive Phalen's maneuver. (Tr. at 1120.) He also displayed tenderness to palpation at the base of both thumb metacarpals and there was a positive CMC grind test. (Tr. at 1120.) Dr. Creighton assessed him with bilateral right greater than left CMC osteoarthritis as well as bilateral carpal tunnel syndrome. (Tr. at 1120.) Dr. Creighton noted that:

> I had a long discussion with the patient today regarding his bilateral hands. I reviewed his radiographs of the hands with him in clinic. His exam, history and radiographs are consistent with both carpal tunnel syndrome as well as right greater than left CMC osteoarthritis.

(Tr. at 1120). Plaintiff was provided bilateral braces to help his symptoms and was encouraged to wear bilateral wrist splints at night to help with his nocturnal symptoms. Dr. Creighton explained the need for bracing due to his weakness and instability of the bilateral upper extremities which required "stabilization from [a] semi-rigid/rigid orthosis to improve their function." (Tr. at 1120.)

Notably, the ALJ's decision does not mention at all Plaintiff's carpal tunnel syndrome or his osteoarthritis. The ALJ does not discuss or even cite Dr. Creighton's treatment, imaging, and diagnoses. Thus, this is not a case where the ALJ clearly or explicitly considered this evidence under a broader umbrella impairment; instead, because the ALJ does not mention these impairments or discuss this medical record at all, it is impossible to tell whether or how the ALJ considered these impairments.

Similarly, a few days later in July 2021, Plaintiff was seen for bilateral foot pain, and based on x-rays and an examination was diagnosed with severe pes planus, left greater than right, and moderate hammertoe deformity. (Tr. at 1115.) Plaintiff's foot pain was subsequently evaluated at EmergeOrtho in August 2021, with radiographs reflecting "collapse

10

of longitudinal arch, bilaterally, more severe on the left than the right" and "evidence of uncovering of the talus on the left." (Tr. at 1111.) Examination reflected limited range of motion and reduced strength. The record reflects that in addition to his ongoing diabetic peripheral neuropathy, which would continue to be treated with his primary care provider, Plaintiff was also diagnosed with "posterior tibialis tendinopathy" as a "chronic condition with exacerbation of symptoms." (Tr. at 1111.)

Again, the ALJ's decision does not mention in any way Plaintiff's severe pes planus, his hammertoe deformity, or his diagnosis of posterior tibialis tendinopathy, and the ALJ does not discuss or cite these medical treatment records or imaging. Again, it is possible that the ALJ accounted for these impairments under the umbrella of "neuropathy," but because the ALJ did not mention these impairments or these treatment records, the Court cannot determine the basis for the ALJ's reasoning.

Notably, this failure is particularly important in the ALJ's assessment of Plaintiff's symptoms. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. at 30), but because the ALJ failed to address these impairments at all, the Court cannot determine whether or how the ALJ considered these impairments and whether these additional impairments would affect the analysis of Plaintiff's statements regarding his symptoms.

As noted by Plaintiff, a recent decision in the Western District of North Carolina considered a similar error and concluded that remand was necessary:

11

In his discussion of his step two findings, the ALJ never mentioned the Plaintiff's CVI. During the RFC determination, the ALJ does not mention the Plaintiff's PAD or CVI.

A review of the ALJ's explanation shows that he did not discuss or reference certain significant portions of the Plaintiff's medical providers' reports in concluding the "medical evidence does not support the claimant's allegations of disabling functional limitations." The ALJ neglected to discuss clinical observations and testing that indicated symptoms of CVI and PAD. This included swelling in the Plaintiff's legs that got worse at the end of the day, claudication after only a short distance, "significant venous reflux," "extremely painful" varicose veins, and varicose veins with swelling. By not discussing this evidence, the ALJ did not perform the required analysis to determine how the Plaintiff's symptoms could limit her capacity for work or determine that the symptoms were not supported by the evidence. See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The ALJ also neglected to discuss the treatment notes of Doctor Griggs indicating that the Plaintiff should keep her "legs elevated when she is able" as part of her venous treatments.

Without reference to either PAD or CVI, the ALJ briefly mentioned the Plaintiff's symptoms of leg pain, numbness of the limbs and feet, and mild edema. The ALJ's failure to cite specifically to either the CVI or PAD makes it impossible to confirm that he considered these complaints, or the medical evidence regarding these complaints and diagnoses, in reaching the RFC. Further, because the Plaintiff has diabetes and neuropathy and the ALJ did discuss those impairments, the Court does not know whether the ALJ thought the numbness, pain, and edema were related only to diabetes and neuropathy. This frustrates the Court's review. Woods [v. Berryhill], 888 F.3d [686, ] 694 [(4th Cir. 2018)].

The Defendant attempts to justify the ALJ's failure to include discussion about the Plaintiff's CVI and PAD by asserting that the ALJ addressed the Plaintiff's issues more broadly through "restrictions arising out of diabetes and the associated neuropathy.". While "[i]t may well be" that the ALJ's discussion of the Plaintiff's numbness, pain, and edema was intended to encompass her CVI and PAD as well as her other impairments, "meaningful review cannot rest on such guesswork" by the Court. Woods, 888 F.3d at 694; see Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must ... affirm the ALJ's decision only upon the reasons he gave.").

Given the ALJ's failure to address the evidence of the Plaintiff's symptoms or discuss by name the Plaintiff's CVI and PAD, the Court cannot find that the ALJ considered the impairments of CVI and PAD in forming the Plaintiff's RFC. Without consideration of the Plaintiff's CVI and PAD and her other

12

Case 1:24-cv-00079-JEP    Document 15    Filed 03/31/25    Page 12 of 14

> severe and non-severe impairments in conjunction with CVI and PAD, the ALJ failed to both apply the correct legal standard and paint a logical bridge from the evidence to the conclusion he reached regarding Plaintiff's RFC. Woods, 888 F.3d at 694. The ALJ committed reversable error by failing to include in the RFC all of the Plaintiff's limitations or by failing to explain why accommodations for these limitations were not incorporated.

Absher v. Saul, No. 5:19-cv-00172, 2021 WL 327639, at *5 (W.D.N.C. Feb. 1, 2021) (internal fact citations omitted); see also Thomas H. v. O'Malley, No. 1:22CV876, 2024 WL 1350070, at *4 (M.D.N.C. Mar. 29, 2024).

Similarly in the present case, the Court cannot attempt to guess at how the ALJ assessed Plaintiff's carpal tunnel syndrome, CMC arthritis, severe pes planus, hammertoe deformity, or posterior tibialis tendinopathy. See Hudson v. Colvin, No. 7:12-CV-269-FL, 2013 WL 6839672, at *4, 8 (E.D.N.C. Dec. 23, 2013) (noting that "[i]t hardly bears repeating that an ALJ is required to consider all relevant evidence and to sufficiently explain the weight he gives to probative evidence[,]" and stating that the ALJ's "silence regarding [relevant medical assessments] raises the question whether [the ALJ] even considered this evidence"). While the ALJ was free to give little probative weight to these omitted medical records, "he must say so and explain why." Carter v. Colvin, No. 5:12-CV-736-FL, 2014 WL 351867, at *7 (E.D.N.C. Jan. 31, 2014) (internal quotation and alteration omitted). The Court acknowledges that an ALJ's "failure to discuss every specific piece of evidence does not establish that she failed to consider it." Mitchell v. Astrue, No. 2:11-CV-00056-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (internal quotation and alteration omitted). However, the ALJ's decision must still ultimately "reflect[] that she conducted a thorough review of the evidence before her." Id. In the instant case, the ALJ's decision omitted all discussion of several physical impairments and the related medical evidence. Thus, the ALJ's failure to address the additional

alleged impairments at step two of the evaluation process is not harmless, since the relevant medical evidence was not addressed at any point in the evaluation process, and the additional alleged impairments remain completely unaddressed. Ultimately, the ALJ's omissions render the Court unable to meaningfully review the ALJ's decision to determine if it is supported by substantial evidence. As a result, remand is necessary to allow the ALJ to address this evidence in the first instance.[5]

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability IS REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for proceedings consistent with this Order. To this extent, Defendant's Dispositive Brief [Doc. #14] is DENIED, and Plaintiff's Dispositive Brief [Doc. #13] is GRANTED. This, the 31st day of March, 2025.

Joi Elizabeth Peake
United States Magistrate Judge

---

[5] This failure also potentially affects the ALJ's analysis of the opinion evidence, including the opinion from PA Yates-Davis, who relied in part on Plaintiff's diagnosis of osteoarthritis (Tr. at 1888), and the opinions of the consultative examiners, PA Brittney Bishop and PA Lauren Flannagan. The ALJ here found unpersuasive the opinion evidence from treating PA Yates-Davis, treating physician Dr. Gioffre, consultative examiner PA Bishop, and consultative examiner PA Flannagan. (Tr. at 33-35.) Plaintiff raises multiple contentions regarding the assessment of the opinion evidence, and the Court need not consider those contentions further at this time, as they can be considered further in light of the remand required above.